```
          IN THE UNITED STATES COURT OF APPEALS
                 FOR THE FIFTH CIRCUIT


              _____

                  No. 97-30170
              _____


In The Matter Of: LANDFINDERS, INC;
EDWARD P. BENJAMIN, JR;
FIRST NATIONAL BANK OF COMMERCE OF
NEW ORLEANS; LANDOWNER'S INTEREST, INC.,


                                                      Debtors.


LANDFINDERS, INC.; LANDOWNER'S
INTEREST, INC.; EDWARD B. BENJAMIN, JR.;
FIRST NATIONAL BANK OF COMMERCE OF
NEW ORLEANS; CATHERINE CARMEN COLE PETTY,


                                                      Appellants,

                       versus

ENERGY INVESTMENT COMPANY; MICHAEL T.
HALBOUTY ENERGY COMPANY; ROWAN
PETROLEUM, INC.; TEXACO, INC.; LEA
EXPLORATION INC.,


                                                      Appellees.
********************************************************************
EDWARD B. BENJAMIN, JR., Co-Trustee for
the Class Trust of the children of
Harris P. Dawson, Jr., under the will of
Jennie P. Dawson; FIRST NATIONAL BANK OF
COMMERCE OF NEW ORLEANS, Co-Trustee for
the Class Trust of the children of
Harris P. Dawson, Jr., under the will of
Jennie P. Dawson,


                                                      Appellants,

                       versus

ENERGY INVESTMENT CO.; MICHAEL T.
HALBOUTY ENERGY COMPANY; ROWAN PETROLEUM,
INC.; TEXACO, INC.; LEA EXPLORATION, INC.,


                                                      Appellees.
********************************************************************
```

EDWARD B. BENJAMIN, JR.; FIRST NATIONAL
BANK OF COMMERCE OF NEW ORLEANS,
Co-Trustee for the Class Trust of the
children of Harris P. Dawson, Jr.,
under the will of Jennie P. Dawson;
LANDFINDERS, INC.,

                                        Appellants,

                    versus

TEXACO, INC.; MICHAEL T. HALBOUTY
ENERGY CO.; LEA EXPLORATION, INC.;
ENERGY INVESTMENT CO.; ROWAN PETROLEUM,
INC.,

                                        Appellees.
_____

        Appeal from the United States District Court for the
                    Middle District of Louisiana
            (96-CV-257, 96-CV-256 & 96-CV-255-B-M1)
_____
                        November 14, 1997
Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

        This appeal involves the interpretation of certain mineral

leases.  While we accord the leases an interpretation different

from that of the trial court, we reach the same end result.

Because the trial court committed no reversible error, we affirm.

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-2-

I

A

As did the trial court, we hold that the leases at issue in this case are unambiguous and we will thus accord the language used in the leases its commonly prevailing meaning. Principal Health Care of Louisiana, Inc. v. Lewer Agency, Inc., 38 F.3d 240, 243 (5th Cir. 1994) (construing Louisiana law); Breland v. Schilling, 550 So. 2d 609, 610 (La. 1989). The bankruptcy court found that Lea breached its obligation under Paragraph 47 of the leases to interrupt the prescription of nonuse running against SSA and that Paragraphs 48 and 52 were stipulated damages provisions that set out Landfinders' sole remedy against Lea for such breach. This interpretation was in error.

Paragraph 47 does not impose an unconditional obligation upon Lea to interrupt prescription. Indeed, the contract itself recognized that Lea might not accomplish the goal of prescription interruption. Paragraph 48 specifically provided that "[i]f, on or before November 24, 1986, Lessee has determined that it is not possible for him to comply with the performance obligations [of Paragraph 47]," then the lessee could elect between executing a total release or continuing the lease under the different circumstances set out in Paragraph 52. When the leases are construed as a whole, it is clear that Paragraphs 48 and 52 set out

alternatives to performance under Paragraph 47. Lea thus did not "breach" Paragraph 47 when it failed to drill a Commitment Well on SSA before November 24, 1986.

B

Our holding that Lea did not breach Paragraph 47 when it failed to interrupt prescription and elected to continue the leases under Paragraphs 48 and 52 moots Landfinders' argument that the bankruptcy court erred in construing Paragraphs 48 and 52 as stipulated damages provisions. The performance duties set out in the leases are not severable. Paragraphs 48 and 52 are not stipulated damages provisions; they merely set out alternatives to performance under Paragraph 47.

C

Landfinders also maintains that the bankruptcy court erred when it concluded that Lea did not breach its performance obligation under Paragraph 52 because the court found it was unfeasible to drill a well with the requisite geological specifications. The contract effectively forgave the failure to drill the Commitment Well if "prevailing circumstances [made] a bottom hole location under the leased premises unfeasible." The substance of Landfinders' argument is that the trial court erroneously defined "unfeasible" to mean "cost prohibitive" instead of according the term a more narrow meaning closer akin to

-4-

"impossible."[1]  We disagree.  In everyday parlance, unfeasibility does not connote impossibility.  Webster's Third New International Dictionary 2495 (1993) (defining unfeasible as "not feasible" or "impracticable").  There is no suggestion that the word was a term of art contradicting its usual meaning.

Although Lea drilled a well only 200 feet away from the leased premises, the trial court found that it would have been unfeasible to attempt to sidetrack the well so that it would have a bottom hole location under the leased premises.  The evidence indicated and the trial court found that Lea drilled at the optimum geological location and still drilled a dry hole.  It would have been senseless to continue the operation in the face of the information gleaned from that well.  The trial court did not clearly err by finding that it was unfeasible to drill a well with a bottom hole location under the leased premises.

## II

In conclusion, we hold that the bankruptcy court erroneously construed the leases, but that such error does not mandate reversal

---

[1]Contained within this argument is the companion contention that the court erroneously utilized parol evidence to broadly define "unfeasible."  As set out in the opinion, we hold the term to be unambiguous.  Further, even if the term were ambiguous, the evidence is clear that the parties did not contemplate a narrow construction.  That the parties redacted the term "impossible" and instead employed "unfeasible," even though the change was at Lea's urging, evidences an intent consistent with the definition enunciated by the trial court and adopted by this court.

in this instance. Reading the leases as a whole, which we must under Louisiana law, we hold that Lea was not under an unconditional obligation to interrupt the prescription of nonuse running against SSA. Paragraphs 48 and 52 provided alternative performance obligations to those set out in Paragraph 47, thus, Lea effected no breach of the leases by failing to meet the interruption requirement in Paragraph 47. Furthermore, the bankruptcy court did not commit clear error when it found that Lea fulfilled its drilling obligations under the alternative provisions because it was unfeasible to drill a well with a bottom hole location under the leased premises.[2]

For the reasons set out in this opinion, the ruling of the district court is

A F F I R M E D.

---

[2]Appellant Petty's claim for attorneys' fees and costs of the litigation is mooted because she did not "prevail" in this action on the contract.